IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DARRYL GARDNER,** | : | CIVIL ACTION NO. 1:22-CV-1007 |
| **Plaintiff** | : | (Judge Conner) |
| v. | : | |
| **LAUREL HARRY,** *et al.*, | : | |
| **Defendants** | : | |

### MEMORANDUM

This is a prisoner civil rights case filed pursuant to 42 U.S.C. § 1983. Plaintiff, Darryl Gardner, who is serving a life sentence in state prison, asserts that the Pennsylvania Department of Corrections' policy granting single cell status to inmates who have been sentenced to death while not affording the same status to inmates serving life sentences violates his right to equal protection. Defendants have moved to dismiss and Gardner has moved for summary judgment. The motion to dismiss will be granted and the motion for summary judgment will be denied.

**I.      Factual Background & Procedural History**

Gardner is incarcerated in Camp Hill State Correctional Institution ("SCI-Camp Hill"). He filed his initial complaint on June 13, 2022, naming as defendants Laurel Harry, SCI-Camp Hill's superintendent; George M. Little, the secretary of the DOC; and Tanya Heist, SCI-Camp Hill's grievance coordinator. (Doc. 1). The court dismissed the complaint pursuant to a screening review under 28 U.S.C. § 1915A on August 9, 2022 and granted Gardner leave to amend. (Docs. 10-11).

Gardner timely filed an amended complaint on August 24, 2022. (Doc. 13). The amended complaint raises a single claim that the DOC's policy of granting inmates who have been sentenced to death single cell status while denying the same status to inmates who have been given life sentences violates his right to equal protection under the Fourteenth Amendment. (Doc. 13). The amended complaint does not specifically name any defendants, but includes a caption listing "Harry, et al." as defendants. (Id. at 1). The court liberally construes this as naming the same defendants named in the original complaint.

Defendants moved to dismiss the amended complaint on October 24, 2022 and filed a supporting brief on November 4, 2022. (Docs. 18, 20). Defendants argue that the amended complaint should be dismissed for failure to name defendants. (Doc. 20 at 5-6). Defendants further argue the complaint fails to state a claim upon which relief may be granted and that they are entitled to qualified immunity because: (1) inmates sentenced to life are not similarly situated to inmates sentenced to death; (2) the different housing classifications given to the two groups of inmates are rationally related to a legitimate government interest; and (3) the right Gardner asserts is not clearly established. (Id. at 6-13). Briefing on the motion to dismiss is complete and it is ripe for review. (See Docs. 20, 22-24). Gardner has additionally moved for summary judgment. (Doc. 29).

## II.   Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the

2

court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint, the court conducts a three-step inquiry. See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded. Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550

3

U.S. at 556. A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

Courts must liberally construe complaints brought by *pro se* litigants. Sause v. Bauer, 585 U.S. __, 138 S. Ct. 2561, 2563 (2018). *Pro se* complaints, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

### III. Discussion

Gardner brings his constitutional claims under 42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. 42 U.S.C. § 1983. The statute is not a source of substantive rights, but serves as a mechanism for vindicating rights otherwise protected by federal law. See Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a Section 1983 claim, plaintiffs must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law." Kneipp, 95 F.3d at 1204 (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).

We will first consider defendants' argument that the amended complaint should be dismissed for its failure to specifically name any defendants. (Doc. 20 at 5-6). Gardner responds that his failure to specifically name defendants should not result in dismissal because the defendants "are not actually the true subjects to be sued" because he intends to sue the DOC. (Doc. 22 at 2). Defendants interpret this

4

as an assertion that Gardner raises only official capacity claims. (Doc. 23 at 2). Defendants argue that the only official capacity claim Gardner can bring is a claim for injunctive relief pursuant to <u>Ex Parte Young</u>, 209 U.S. 123 (1908). Defendants argue that if the amended complaint is construed to assert a claim under the <u>Ex Parte Young</u> doctrine, defendants Heist and Harry should be dismissed because they are not sufficiently connected to the challenged single cell policy to be sued in their official capacity. (Doc. 23 at 5-11).

The court liberally construes the amended complaint to assert only one claim for injunctive relief requiring defendants to provide Gardner single cell status. (<u>See</u> Doc. 13 at 6 ("The Complainant is seeking single cell housing and classification by the Order of the Court in accordance to the Fourteenth Amendment of the United States Constitution and the Equal Protections afforded thereby."). We also construe the complaint to assert claims against defendants in their official capacities only. The complaint does not make any specific factual averments as to wrongful actions by defendants, but asserts that the "D.O.C. is in violation of the complainant's Fourteenth Amendment rights by not affording him single housing/status." (<u>Id.</u> at 3).

Gardner's official capacity claim for injunctive relief is cognizable under the <u>Ex Parte Young</u> doctrine. Although states and state officials acting in their official capacity are ordinarily entitled to sovereign immunity from civil suits, the <u>Ex Parte Young</u> doctrine allows plaintiffs to sue individual defendants in their official capacity for injunctive relief requiring the defendants to prospectively cease violating the plaintiff's rights. <u>See</u> e.g., <u>Reed v. Goertz</u>, 598 U.S. __, 143 S. Ct. 955,

960 (2023); Waterfront Comm'n of N.Y. Harbor v. Governor of N.J., 961 F.3d 234, 238 (3d Cir. 2020).

The court agrees with defendants that Heist and Harry are not appropriate defendants with respect to Gardner's claim for injunctive relief under the Ex Parte Young doctrine. Under the Ex Parte Young doctrine, state officials "must have some connection with the enforcement" of the government policy or action being challenged. Ex Parte Young, 209 U.S. at 157; accord Constitution Party of Pa. v. Cortes, 824 F.3d 386, 396 (3d Cir. 2016). The official's enforcement of the policy need not be substantial; the official may be sued based solely on the performance of ministerial functions. Cortes, 824 F.3d at 396; Finberg v. Sullivan, 634 F.2d 50, 54 (3d Cir. 1980). The question is not whether a plaintiff has filed suit against the "most suitable" defendant, but rather whether the defendant has a sufficient connection to the policy to stand in for the government under the legal fiction of the Ex Parte Young doctrine. Finberg, 634 F.2d at 53.

We find that defendants Heist and Harry do not have a sufficient connection to the policy in question to be sued under Ex Parte Young. There is no allegation that Heist and Harry are involved in the enforcement of the policy granting single cell status to inmates sentenced to death and not to those sentenced to life. The DOC's housing policies are authored by the Secretary of the DOC, defendant Little. See DC-ADM 11.2.1 (Nov. 8, 2021), available at https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/11.02.01%20Reception%20and%20Classification.pdf. Heist and Harry, as SCI-Camp Hill officials, appear to have no connection with the implementation or enforcement of DOC-wide policies. Hence, we will dismiss

6

Gardner's claims against Heist and Harry, and we will analyze whether the amended complaint states a claim upon which relief may be granted with respect to defendant Little only.

The amended complaint alleges that the DOC's single cell policy violates Gardner's right to equal protection under the Fourteenth Amendment. The Equal Protection Clause is "essentially a direction that all persons similarly situated should be treated alike." City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (citing Plyler v. Doe, 457 U.S. 202, 216 (1982)). Defendants argue that the equal protection claim fails because Gardner is not similarly situated to inmates sentenced to death. (See Doc. 20 at 8-10).

We agree. As defendants note, the DOC houses all inmates who have been sentenced to death in SCI-Phoenix, see *Execution List*, DOC, https://www.cor.pa.gov/About%20Us /Initiatives/Pages/Death%20Penalty.aspx (click link to "Execution List"),[1] while Gardner is housed in SCI-Camp Hill.[2] Inmates housed in different prisons with different housing and security needs are not similarly situated to one

---

[1] The court may consider information from the DOC's website in resolving defendants' motion to dismiss because it is a matter of public record. Mayer, 605 F.3d at 230. The court may also take judicial notice of the information because it has been made publicly available by a government entity. Vanderklok v. United States, 868 F.3d 189, 205 n.16 (3d Cir. 2017).

[2] Gardner asserts in his opposition brief that "death sentenced inmates are now currently moving among the general population for the purpose of communal activities, while maintaining single cell status and classification." (Doc. 22-1 at 7-8). Gardner does not assert, however, that any death-sentenced inmates have been moved from SCI-Phoenix, and publicly available information on the DOC's website states that all death-sentenced inmates remain housed in SCI-Phoenix. See *Execution List*, supra.

another.  See, e.g., Rouse v. Benson, 193 F.3d 936, 942 (8th Cir. 1999); Thomas v. Duvall, No. 3:16-CV-451, 2017 WL 9532987, at *10 (M.D. Pa. Mar. 1, 2017), *report and recommendation adopted*, No. 3:16-CV-451, 2017 WL 2928153, at *5 (M.D. Pa. July 10, 2017); Hayes v. Lightner, No. 4:14-CV-1922, 2015 WL 6768964, at *6 (M.D. Pa. Oct. 14, 2015), *report and recommendation adopted*, No. 4:14-CV-1922, 2015 WL 6758179, at *1 (M.D. Pa. Nov. 5, 2015); see also Johnson v. Horn, 150 F.3d 276, 285 (3d Cir. 1998) (citing Klinger v. Dep't of Corrs., 31 F.3d 727, 732-33 (8th Cir. 1994) for the proposition that "men and women at different prisons with different administrative and security concerns not similarly situated"), *overruled in nonrelevant part by* DeHart v. Horn, 227 F.3d 47 (3d Cir. 2000).

Moreover, to be similarly situated, plaintiffs and relevant comparators must be "alike 'in all relevant aspects.'"  Startzell v. City of Phila., Pa., 533 F.3d 183, 203 (3d Cir. 2008) (quoting Nordlinger v. Hahn, 505 U.S. 1, 10 (3d Cir. 2008)).  The only allegation in the amended complaint as to why Gardner is similarly situated to inmates who have been sentenced to death is that the Commonwealth of Pennsylvania has not executed a prisoner in many years.[3]  (See Doc. 13 at 4

---

[3] The court takes judicial notice that the governor of Pennsylvania has announced that he will not issue any execution warrants during his term.  See Press Release, Governor Josh Shapiro, Governor Shapiro Announces He Will Not Issue Any Execution Warrants During His Term, Calls on General Assembly to Abolish the Death Penalty (Feb. 16, 2023), https://www.governor.pa.gov/newsroom/governor-shapiro-announces-he-will-not-issue-any-execution-warrants-during-his-term-calls-on-general-assembly-to-abolish-the-death-penalty/.  Thus, it appears that the period in which no executions have occurred in Pennsylvania will continue for the foreseeable future.

("Pennsylvania hasn't had a compulsory execution in forty-nine years[4]. . . . The sentence of life is tantamount to a death sentence. Without executions the two are similarly situated."). This allegation is not sufficient to plead that the death row inmates are similarly situated to Gardner. There are a multitude of other relevant factors—such as institutional security concerns in light of their death row status or the more serious nature of their underlying offenses as well as certain commissary restrictions—on which inmates sentenced to death differ from Gardner. Accordingly, because Gardner has failed to plead that inmates sentenced to death are similarly situated to him in all relevant respects, his amended complaint fails to state an equal protection claim upon which relief may be granted.

Before dismissing a civil rights claim for failure to state a claim upon which relief may be granted, a district court must permit a curative amendment unless the amendment would be inequitable or futile. Phillips, 515 F.3d at 245. We will deny further leave to amend as futile. Gardner has had multiple opportunities to state

---

[4] Defendants dispute the accuracy of this factual assertion, noting that the last inmate executed in Pennsylvania was Gary Heidnik on July 6, 1999. (Doc. 20 at 8 n.5 (citing *People Who Have Been Executed by the Commonwealth of Pennsylvania (May 2, 1995 to Present)*, DOC, https://www.cor.pa.gov/About%20Us/Initiatives/Pages/Death%20Penalty.aspx (click link to "List of individuals executed by lethal injection")). Gardner replies that Heidnik's execution cannot be considered "compulsory" because "Heidnik was executed of his own [volition]. He stopped all appeals, and ask[ed] the state to kill him." (Doc. 22-1 at 2).

Gardner's assertion that no individuals have been executed in Pennsylvania in forty-nine years appears to be inaccurate, notwithstanding the parties' dispute about the circumstances of Heidnik's execution. Publicly available information from the DOC indicates that two individuals—Keith Zettlemoyer and Leon Jerome Moser—were executed by the Commonwealth in 1995. See *People Who Have Been Executed by the Commonwealth of Pennsylvania*, supra.

claims upon which relief may be granted but has failed to do so. We will additionally deny Gardner's motion for summary judgment in light of our conclusion that the amended complaint fails to state a claim upon which relief may be granted.

## IV.     Conclusion

We will grant defendants' motion to dismiss, dismiss Gardner's amended complaint without further leave to amend, deny Gardner's motion for summary judgment, and close this case. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:    June 23, 2023